**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: WRIGHT MEDICAL TECHNOLOGY INC., CONSERVE HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 2329<br><br>This Document Relates to:<br>ELIE M. MIMS and NORMA C. MIMS<br>1:16-cv-3044-WSD |
| ELIE M. MIMS and NORMA C. MIMS,<br><br>          Plaintiffs,<br><br>     v.<br><br>WRIGHT MEDICAL TECHNOLOGY INC. and WRIGHT MEDICAL GROUP INC.,<br><br>          Defendants. | 1:16-cv-3044-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendants Wright Medical Technology, Inc. ("WMT") and Wright Medical Group Inc.'s ("WMG") (together, "Wright Medical") Motion to Dismiss [2].

## I.   BACKGROUND

On December 21, 2010, Plaintiffs Elie M. Mims and Norma C. Mims ("Plaintiffs") filed a products liability action against WMT in the State Court of Gwinnett County, Georgia ("2010 Complaint"), based on alleged defects in WMT's Profemur Total Hip System.  On January 21, 2011, WMT removed the action to this Court, No. 1:11-cv-213-TWT.  In their 2010 Complaint, Plaintiffs sought damages related to and arising from Elie Mims' total hip replacement and explant surgery for his *right* hip.  On February 17, 2014, Plaintiffs executed a settlement agreement and release [3.1] ("Release").  The Release provides that Plaintiffs:

> [C]ompletely release and forever discharge Wright Medical and its . . . parents . . . from any and all past, present or future claims, actions, causes of action, costs, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which [Plaintiffs] now have or which may hereafter accrue or otherwise be acquired on [Plaintiffs'] behalf, without limitation, any and all known or unknown claims for bodily and personal injuries, which have resulted or may result from the alleged acts or omissions of any party hereto.

(Release ¶ 2).  The Release applies to all claims Plaintiffs "have or may ever have against Wright Medical relating to or resulting from the implantation and use of Wright Medical hip systems and components into Elie M. Mims, . . . including any revisions thereto . . . ."  (Id. ¶ 1).

2

Under the settlement agreement, Plaintiffs received monetary compensation, and they acknowledged receipt of the agreed-upon funds in the Release. (Id.) The parties also agreed that the Release represented the "entire agreement among the parties hereto with respect to the subject matter hereof," (id. ¶ 12), and that the Release would be governed by Georgia law, (id. ¶20). Plaintiffs acknowledged that "their execution of this [R]elease is free and voluntary," (id. ¶ 13A), and that they signed the Release "voluntarily and of their own free will and assent[ed] to all the terms and conditions contained in this Release," (id. ¶ 21C). Plaintiffs further acknowledged that they had "reviewed this Release and had the opportunity to have it reviewed by their attorneys," (id. ¶ 15), and that they fully understood the "significance of all of the terms and conditions of this Release and have discussed it with their independent legal counsel, or have had a reasonable opportunity to do so," (id. ¶ 21B).

On August 19, 2016, Plaintiffs filed a short-form complaint [1] ("2016 Complaint") in this MDL based on Mr. Mims's replacement of, and explant surgery on, his *left* hip. The complaint alleges that Mr. Mims' left hip implant was a Wright Medical Conserve hip implant that was implanted on November 22, 2005. (2016 Complaint ¶ 9). Plaintiffs allege Mr. Mims's explant

surgery took place on May 31, 2016.  (2016 Complaint ¶ 11).  Plaintiffs checked all fourteen possible causes of action in the short-form complaint.

On October 18, 2016, Wright Medical filed its Motion to Dismiss, arguing that the clear and unequivocal language of the Release bars all of Plaintiffs' claims in their complaint.  Plaintiffs claim that the Release applied only to injuries and damages arising from the failure to Mr. Mims's *right* hip, and that, at the time the parties entered into the Release and settlement agreement, no evidence existed that Mr. Mims's *left* hip had failed in any way, and Plaintiffs thus did not have a cause of action.  Plaintiffs claim Mr. Mims only learned of issues with his *left* hip in 2016, after which he underwent a total revision surgery of his left hip to remove the WMT product.

## II. DISCUSSION

### A. Legal Standard[1]

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010)

---

[1] As an initial matter, Plaintiffs contend that, because the Motion to Dismiss asks the Court to consider the Release—a document not included with or referenced in the Complaint—the Court must convert the Motion to Dismiss into a motion for summary judgment. The Court disagrees. A court may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documents are (1) central to the plaintiff's claim and (2) undisputed. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). The Release is both central to Plaintiffs' claims and the parties do not dispute the authenticity of the Release. Under these circumstances, the Court may properly consider the Release on a motion to dismiss. Even if the Court converted the Motion to Dismiss into a motion for summary judgment, the Court would reach the same result, relying only on the plain language of the Release.

5

(construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

    B.    Analysis

The Release provides, and the parties agree, that Georgia law governs. (Release ¶ 20). Under Georgia law, a release, like any contract, is interpreted using the applicable rules of contract construction. See Rice v. Huff, 472 S.E.2d 140, 142 (Ga. Ct. App. 1996). In Georgia:

> [T]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must

6

> decide whether the language is clear and unambiguous.  If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity.  Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.  The existence or nonexistence of an ambiguity is a question of law for the court.  If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of construction in O.C.G.A. § 13-2-2.

Woody's Steaks, LLC v. Pastoria, 584 S.E.2d 41, 43 (Ga. Ct. App.2003) (internal citations omitted).  O.C.G.A. § 13-2-2(4) instructs courts to look at the whole contract to instruct the interpretation of any part of it, thereby giving meaningful effect to as much of the contract as possible.  U.S. ex rel. Whitten v. Triad Hosp., Inc., 210 F. App'x 878, 881 (11th Cir. 2006).  "Georgia law allows a party to release another from liability for future conduct and unknown claims, provided such intent is clearly expressed in the release."  Dennis v. City of Atlanta, 751 S.E.2d 469, 472 (Ga. Ct. App. 2013) (citing U.S. Anchor Mfg. v. Rule Indus., 443 S.E.2d 833 (Ga. 1994); Lewis v. Schlenz, 291 S.E.2d 55 (Ga. Ct. App. 1982)).

Plaintiffs argue that the following language in the Release shows that the parties did not intend to release Wright Medical from future claims relating to Mr. Mims's left hip:

7

- Wright Medical is released from liability for "any and all known or unknown claims for bodily and personal injuries, which have resulted or may result from the alleged acts or omissions of any party hereto." (Release ¶ 5).

- "[T]his settlement is a compromise of a disputed claim . . . ." (Release ¶ 5).

- "[Plaintiffs] further understand that the Lawsuit now pending in their names against Wright Medical, being Case No. 1:11-cv-2013 pending in the Federal District Court for the Northern District of Georgia shall be dismissed with prejudice and without costs and that said dismissal may likewise be pled as an absolute bar to any further claims or causes of action relating to the Subject Events asserted by the [Plaintiffs], or on their behalf against Wright Medical now or in the future." (Release ¶ 11).

- "This Release is the entire agreement among the parties hereto with respect to the subject matter hereof." (Release ¶ 12).

Plaintiffs argue that these provisions show that the Release specifically contemplates a release only of claims relating to the failed *right* hip implant. The Court disagrees. Plaintiffs ignore other language that plainly and unequivocally applies to the allegations in Plaintiff's 2016 Complaint relating to Mr. Mims's *left* hip. The Release states that it applies to "all claims [Plaintiffs] have or may ever have against Wright Medical **relating to or resulting from the implantation and use of Wright Medical hip systems and components into Elie M. Mims** . . . including any revisions thereto . . ., **including but not limited to** the matters alleged against Wright Medical or that could have been alleged against Wright Medical in Case No. 1:11-cv-0213 . . . ." (Release ¶ 1) (emphasis added).

8

This language could not be clearer—Plaintiffs released Wright Medical from any future claims relating to any Wright Medical hip system implanted in Mr. Mims, including *but not limited to* claims related to his right hip.  This plain interpretation is supported by paragraph 6 of the Release, which states:  "[i]t is expressly understood and agreed that this Release is for personal physical injuries or sickness . . . and is intended to cover and does cover not only all now known losses and damages, but any further losses or damages **in any way related to** or resulting from the implementation and/or use of **any** Wright Medical Hip Systems and components."  (Release ¶ 6).[2]

The Court finds the plain language of the Release applies to the allegations in Plaintiff's 2016 Complaint relating to Mr. Mims's *left* hip.  Where no ambiguity exists in a contract, a court must enforce that contract according to its unambiguous terms.  See Woody's Steaks, 584 S.E.2d at 43.  Wright Medical's Motion to Dismiss is granted.[3]

---

[2]  Plaintiffs also "expressly waiv[ed] and assume[d] the risk of any of all claims for damages against Wright medical, but of which the [Plaintiffs] d[id] not know or expect to exist, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect [Plaintiffs'] decision to enter into this Release." (Release ¶ 5).

[3]  Because several of the documents the parties submitted in support of their briefs on the Motion to Dismiss contain confidential and sensitive information, the parties filed their motions for leave to file matters under seal [4], [6], [9].  Having

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Wright Medical Technology, Inc. and Wright Medical Group Inc.'s Motion to Dismiss [2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties' motions for leave to file matters under seal [4], [6], [9] are **GRANTED**.

**IT IS FURTHER ORDERED** that Civil Action No. 1:16-cv-3044-WSD is **DISMISSED**.

**SO ORDERED** this 29th day of March, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

reviewed the contents of the documents the parties seek to seal, the Court finds they contain confidential and sensitive information, and the Court grants the parties' motions.